Lorraine Carroll, as Administratrix of the Estate of John F. Carroll, Deceased, and Lorraine Carroll, as Mother and Next Friend of Michael Carroll, a Minor, Plaintiffs-Appellees, v. Preferred Risk Insurance Co., a Corporation, and John Bolton, as Special Deputy Liquidator of the Adams Mutual Insurance Company, Defendants-Appellants.

**Gen. No. 50,046.**

First District, First Division.

June 4, 1965.

Treacy & Breen, of Chicago (John J. Treacy, of counsel), for Preferred Risk Mutual Insurance Company, appellant.

Alvin W. Block and Stephen Levy, of Chicago (Alvin R. Becker, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant, Preferred Risk Mutual Insurance Company, appeals from a declaratory judgment, entered in a nonjury trial, which declared that "the plaintiff is entitled to avail herself of the benefits" of an "uninsured motorists coverage" clause. Preferred Risk contends that the "third party" involved "was not uninsured."

Plaintiff's intestate, John Carroll, was insured under an automobile insurance policy issued by Preferred Risk. One of the coverages provided by the Preferred

Risk policy was known as coverage "U" or protection against uninsured motorists. This clause provided that where the policyholder suffered injury in an accident with an uninsured third party, the policyholder might recover from his own insurer the amount of damages for personal injuries for which the uninsured party might be held liable at law.

John Carroll, while driving his car, was fatally injured in an automobile collision. The other car was driven by John Mimms, the so-called "third party." The principal issue here is whether John Mimms was an uninsured motorist at the time of the occurrence.

The collision occurred at 10:00 p. m. on June 22, 1962. Earlier the same day at 5:00 p. m., Mimms, at the Iberra Insurance Agency, completed an application for insurance with the Adams Mutual Insurance Company. The application was received by mail on the morning of June 25, 1962, by John VanGundy, vice president and underwriting manager of Adams. The application sought automobile liability insurance retroactive to 12:01 a. m. on June 22, 1962. Obviously, it contained no information as to the Carroll-Mimms collision on the evening of June 22, 1962. The application was processed and approved, and policy No. 26187 was mailed to the Iberra Insurance Agency on June 26, 1962, bearing an effective date of June 22, 1962, 12:01 a. m.

On the following day, June 27, 1962, Adams acquired knowledge of the collision of June 22, 1962. On that day, the underwriting manager caused the Mimms policy to be physically intercepted at the Iberra Insurance Agency, and it was returned to Adams before it could be delivered to Mimms. Adams voided the policy on the ground that the issuance of the antedated policy was the result of an error and at variance with the standard company procedure, and the transaction was voided on its books.

Adams subsequently "declined and refused to extend coverage to the said John Mimms" for the Carroll collision. Thereupon, the present declaratory action was filed by plaintiff to have "the Court adjudge and determine whether plaintiff is entitled to avail herself of the benefits of Coverage 'U' " of the policy issued to John Carroll, her intestate, by defendant, Preferred Risk.

After an extended trial, the court entered a judgment in which it was found that John W. Mimms was the owner and operator of an uninsured automobile which caused "bodily injury and death to the operator and occupants of the automobile of John F. Carroll," and ordered and decreed that plaintiff was entitled to the benefits under "coverage 'U'," the uninsured motorists provision of the policy issued by Preferred Risk to John F. Carroll. It is from this judgment that defendant, Preferred Risk, appeals.

Defendant contends that absent evidence of fraud or concealment on the part of John Mimms, where Adams Mutual Insurance Company issued and charged for a policy effective as of a given date, the policy is valid and enforceable, and at the time of the occurrence, Mimms must be considered an *insured* motorist.

Defendant also contends that "no alleged misrepresentation or concealment could void John Mimms' policy unless it was contained in a written application or declaration which was made a part of the policy itself." Authorities cited are Illinois Revised Statutes, c 73, § 766; Loving v. Allstate Ins. Co., 17 Ill App2d 230, 149 NE2d 641 (1958); Marshall v. Metropolitan Life Ins. Co., 405 Ill 90, 90 NE2d 194 (1950); Klim v. Johnson, 16 Ill App2d 484, 148 NE2d 828 (1958); and Lentin v. Continental Assurance Co., 343 Ill App 193, 98 NE2d 544 (1951).

Plaintiff asserts that the uncontradicted evidence clearly shows that on June 26, 1962, Adams Mutual

173

mailed a policy of insurance to an insurance broker with whom John Mimms had done business. The policy was intercepted before it reached Mimms. It was mailed to the broker without knowledge of the occurrence in which Carroll was killed. No policy or binder existed at the hour of the collision. Mimms never had possession of the policy. He never informed Adams Mutual of the occurrence.

■ Premised on the foregoing, plaintiff, in substance, contends "where a loss occurring before the risk attaches is known only to the applicant and he obtains a policy without disclosing the fact of loss the policy is void, even though the contract be given a date prior to the loss. [1 Joyce on Insurance, 2nd Ed, § 107]." Also, "a misrepresentation of a material fact concerning the prior accidents of the insured will render the policy void ab initio. Palmer v. Bull Dog Auto Insurance Ass'n., 294 Ill 287, 128 NE 499. Unquestionably a prior fatal accident by the prospective insured within the proposed policy period is material to the insurer in determining the desirability of accepting the risk. It is not necessary upon the part of the insurer to aver and prove that the misrepresentation was made with intent to deceive if it be material to the risk to be assumed. U. S. F. & G. Co. v. First National Bank, 233 Ill 475, 84 NE 670; Campbell v. Prudential Ins. Co. of America, 15 Ill2d 308; 155 NE2d 9."

Plaintiff also cites Millar v. New Amsterdam Casualty Co., 289 NYS 599 (1936), where an application for automobile liability insurance was made at noon on January 20, 1928, and later in the day the applicant was involved in an occurrence in which several persons were injured. The application was received and accepted by defendant on January 21, and a policy was issued bearing an effective date of noon on January 20, 1928. The policy was issued by the insurer

without knowledge of the occurrence on the afternoon of the 20th. The court (on page 604) stated:

"Kauffman could, however, not accept the policy at that time in good faith without stating to the agency that the accident of January 20th had occurred. The hazard to be insured against was at that time greater than the defendant knew when it wrote the policy and caused it to be countersigned. An acceptance of the policy under such circumstances would be a fraud upon the defendant, and upon such an interpretation of the facts the contract was obviously void.

". . .

"The applicant had full knowledge of the accident when it occurred, as he participated in it. Under such circumstances, it was the express duty of Kauffman to notify the defendant at once of the substantial increase in hazard resulting from the accident."

Plaintiff also cites Stipcich v. Metropolitan Life Ins. Co., 277 US 311, 48 S Ct 512, where the court said:

"But the reason for the rule still obtains, and with added force, as to changes materially affecting the risk which come to the knowledge of the insured after the application and before delivery of the policy. For, even the most unsophisticated person must know that in answering the questionnaire and submitting it to the insurer he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure."

175

The above pronouncements from the Stipcich case were quoted in Strangio v. Consolidated Indemnity & Ins. Co., 66 F2d 330 (9th Cir, 1933), where, under facts somewhat similar to the instant case, the court announced the rule of a continuing duty on the part of the insured to disclose to the insurer the fact that there had been an accident after the making of the application and before the policy was issued.

The Stipcich case was also cited in Western and Southern Life Ins. Co. v. Tomasun, 358 Ill 496, 193 NE 451 (1934), a life insurance case, in which the insured, in an application, misrepresented the state of her health. After reviewing the authorities at length and quoting from the Stipcich case, our Supreme Court said (page 503):

> "Viewing the record with the utmost charity toward the insured deceased, we can find no reason to believe that she acted otherwise than with fraudulent intent, nor to believe that she considered herself in good health, or a fairly insurable risk, when the application was made. Regardless of these facts, her beneficiary would in any event be barred, under the holding in the Stipcich case, supra, for failure of the insured to make disclosure of the operation of June 6 during the pendency of her application."

██ We conclude, as plaintiff argues, that section 766 of Chapter 73 (Ill Rev Stats 1963) and the authorities cited to support defendant's contention "that no misrepresentation is ground for avoidance, unless it is in writing," are not in point here. We think, as plaintiff asserts, the purpose of section 766 is to preclude the insurance company from charging misrepresentation of facts which have occurred up to and at the time the application for insurance is executed. This section does not alter the duty of the insured to

176

disclose the existence of facts materially affecting the acceptance of the risk which come to the knowledge of the insured after the application is made and before the policy is issued. Therefore, defendant's authorities do not apply here, because they are factually dissimilar to the instant case.

█ The record shows that Mimms never informed Adams Mutual of the occurrence which happened after the application and before the delivery of the policy. If, during the period between the making of the application and issuance of the policy, the applicant discovers facts which materially affect the acceptance of the risk, which the collision here certainly did, and in the absence of a binder, "the most elementary spirit of fair dealing would seem to require him to make a full disclosure. (Stipcich v. Metropolitan Life Ins. Co., 277 US 311, 317. See, also, Western and Southern Life Ins. Co. v. Tomasun, 358 Ill 496, 503, 193 NE 451.) Since John Mimms did not disclose the fact of the Carroll collision, Adams Mutual was within its rights in refusing to extend coverage to Mimms for this collision. Mimms was an *uninsured* motorist at the time of the occurrence.

For the reasons given, the declaratory judgment of the trial court is affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.