INTERNATIONAL AMPHITHEATRE COMPANY, Plaintiff-Appellee, v. VANGUARD UNDERWRITERS INSURANCE COMPANY, Defendant-Appellant and Cross-Defendant and Appellant and Counterplaintiff and Third–Party Plaintiff-Appellant (Al-Par, Inc., *et al.*, Defendants; Denise Morales *et al.*, Cross–Plaintiffs-Appellees; Rainbow Productions, Inc., Cross-Defendant; David Cox, Intervening Petitioner and Counterdefendant-Appellee; W. Russell Hummel & Company, Inc., Third–Party Defendant-Appellee).

First District (3rd Division)   No. 87—3165

Opinion filed December 21, 1988.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Chicago (Nancy Jo Arnold and Henry J. Marquard, of counsel), for appellant.

Jacobson & Sorkin, Ltd., of Chicago (Milton C. Jacobson, Steven M. Sandler, and Kitra K. Killen, of counsel), for appellees Denise Morales and Martha Novales.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Mary A. Sliwinski, David E. Morgans, and Lloyd E. Williams, Jr., of counsel), for appellee International Amphitheatre Company.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Kevin R. Sido, Stephen R. Swofford, and Lynn D. Dowd, of counsel), for appellees David Cox and W. Russell Hummel & Company, Inc.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant Vanguard Underwriters Insurance Company (Vanguard) appeals from the trial court's granting of the following three motions in a declaratory judgment action: (1) the motion for summary judgment of plaintiff, International Amphitheatre Company (Amphitheatre), on the issue of Vanguard's duty to defend the Amphitheatre in certain personal injury suits; (2) the motion for summary judgment of cross-plaintiffs Denise Morales (Morales), Hugo Novales and Martha Novales (Novales) on the issue of Vanguard's duty to defend cross-defendant Rainbow Productions (Rainbow) in the personal injury suits; and (3) the motion to dismiss Vanguard's counterclaim against counterdefendant David Cox (Cox) and Vanguard's third-party complaint against third-party defendant W. Russell Hummel & Company (Hummel).

For the reasons stated below, we affirm the judgment of the circuit court.

The record indicates the following. Vanguard, an insurer, issued a general liability policy, number GL 1041, to defendants Al-Par, Inc. (Al-Par), and Maryland Leisure Corporation (Maryland), as the named insureds, for the policy period from July 29, 1981, to July 29, 1982. The policy covers bodily injury and property damage liability. Pursuant to its general liability provisions, the policy provides coverage for "Social Gatherings & Meetings on premises not owned or operated by the insured." Further, regarding independent contractors, the policy states, "Operations *** Excluding Security and Crowd Control" come within coverage. The policy also contains four endorsements regarding coverage.

Prior to December 29, 1981, Amphitheatre entered into an agreement to lease its premises in Chicago to Rainbow for a rock concert to be held on December 29, 1981. On December 29, 1981, Vanguard, through its managing agent, authorized Hummel to issue a certificate of insurance pursuant to policy GL 1041 to Talent Coordinators of America, Inc. (Talent), a copromoter and coproducer of the concert, naming Amphitheatre, Rainbow, and the rock musicians as additional insureds.

Vanguard contends that at the time of negotiations for the policy, it was anticipated that Al-Par and/or Maryland would be involved in the promotion of approximately 2,000 concerts during the first year of the policy. Vanguard asserts that whenever a new concert was scheduled by Al-Par or Maryland, a telephone call would be made from their offices to the office of the insurance agent, Hummel. Hummel would then inform Vanguard of the date of the concert and

the entities which were to be named as additional insureds. Vanguard would issue a change endorsement to the policy, adding the additional insureds for that particular concert. The insurance agent would issue a certificate of insurance to the new additional insureds for the concert.

During the concert at the Amphitheatre on December 29, 1981, several persons in attendance allegedly were attacked and sexually abused. Four lawsuits were filed against the Amphitheatre and other defendants, alleging negligent and wilful and wanton conduct resulting in the plaintiffs' injuries. The tort plaintiffs include Morales, Novales, and other defendants/cross-appellees (tort plaintiffs) in the instant appeal. Several of the tort defendants tendered their defense in the personal injury suits to Vanguard. Vanguard undertook the defense of Al-Par, an officer of Al-Par, Maryland, Talent, and the musicians. Vanguard refused, however, to defend Amphitheatre and Rainbow.

Amphitheatre then filed a complaint for declaratory judgment, seeking a declaration that pursuant to the certificate of insurance issued by Vanguard, Amphitheatre was an additional insured under policy GL 1041 and the tort suits presented a potential liability for which Amphitheatre is covered by the Vanguard policy. The complaint for declaratory judgment also alleges that Amphitheatre had not been provided with a copy of the policy itself, but only with the certificate of insurance.

Amphitheatre filed a motion for summary judgment against Vanguard. The motion asserted, among other things, that policy endorsements numbers 3 and 4, on which Vanguard is relying to deny coverage, do not apply to Amphitheatre, since Amphitheatre was not furnished a copy of the policy.

Endorsement number 3 of the policy provides:

"IT IS HEREBY UNDERSTOOD AND AGREED THAT CO-PROMOTERS AND BUILDING OWNERS, MANAGERS, LESSORS AND LANDLORDS SHALL BE COVERED AS ADDITIONAL INSUREDS, UNDER THIS POLICY BUT ONLY WITH RESPECT TO THE SOLE NEGLIGENCE OF THE NAMED INSURED'S OPERATIONS.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED."

Endorsement number 4 of the policy states:

"IN CONSIDERATION OF THE PREMIUM CHARGED IT IS HEREBY UNDERSTOOD AND AGREED THAT THIS POLICY WAS ISSUED IN RELIANCE UPON THE FOL-

LOWING MATERIAL REPRESENTATIONS:

1. THE NAMED INSURED SHALL NOT ASSUME ANY OBLIGATION TO PROVIDE SECURITY OR CROWD CONTROL SERVICES AT ANY CONCERT SITE.

2. THE NAMED INSURED SHALL ENDEAVOR TO SECURE EVIDENCE OF GENERAL LIABILITY INSURANCE FROM EACH OWNER, LESSOR, MANAGER OR LANDLORD FOR EACH CONCERT SITE.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED."

The trial court prepared a memorandum opinion. Regarding Amphitheatre's motion for summary judgment, the trial court found that the tort plaintiffs' complaints allege that all named tort defendants negligently operated and maintained the premises. The court stated that since Al-Par and Maryland may be found negligent in the control and maintenance of the premises, and since Al-Par and Maryland may be considered agents of Amphitheatre, therefore Amphitheatre may be held liable for the "sole negligence" of Al-Par and Maryland under endorsement number 3.

The court further found that endorsement number 4 provides coverage to the named insured only upon the named insured's representation that it will not assume any obligations to provide security and crowd control. The court concluded that since the tort complaints allege negligence and failure to furnish security and crowd control, there arises a duty to defend, since the allegations against Amphitheatre potentially come within coverage. Further, the trial court stated that, even if it found that endorsements numbers 3 and 4 failed to provide coverage, in any event, the endorsements cannot be raised against Amphitheatre, since Amphitheatre did not receive a copy of the policy.

The trial court also looked to the affirmative defenses raised by Vanguard in opposition to the motions for summary judgment. Vanguard asserted that the certificate of insurance issued to Amphitheatre is void since it was procured by a material misrepresentation of fact by an agent of Maryland. The trial court found that the requests for insurance were made orally and that there was no written application for the policy. The court cited section 154 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 766), which requires that an alleged misrepresentation made by an insured must appear in the *written* application for insurance. Since there was no such writing in the instant case, the court found Vanguard was unable to show the alleged misrepresentation. Further, section 154 also requires a show-

ing of actual intent to deceive of facts that materially affect the acceptance of the risk or the hazard assumed by the insurer. The trial court found no evidence to support Vanguard's assertions that Amphitheatre knew that Perry and Rainbow were the sole promoters of the concert, or that Amphitheater concealed that fact from Vanguard when Vanguard issued its certificate of insurance.

In a prior appeal involving the parties to the instant case (*International Amphitheatre Co. v. Vanguard Underwriters Insurance Co.* (1988), 166 Ill. App. 3d 369, 519 N.E.2d 1015) (the prior appeal), this court reviewed the dismissal of Vanguard's counterclaim against counterdefendant Cox. The trial court had dismissed the counterclaim with prejudice on the ground that it failed to state a cause of action, since it purported to sound in "non-express" indemnity, a cause of action no longer viable in view of the "Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1987, ch. 70, par. 301 *et seq.*) (the Contribution Act), which abolished actions based on implied indemnity. This court reversed the trial court and remanded the matter for further proceedings. This court found that the Contribution Act did not bear on Vanguard's action, since the counterclaim seeks indemnification and purports to state a cause of action based on agency and contract law.

After the trial court dismissed Vanguard's counterclaim and before this court issued its opinion in the prior appeal, Vanguard filed an amended counterclaim against Cox and a third-party complaint against Hummel. The amended pleadings seek contribution from Cox and Hummel. The trial court also dismissed these pleadings (as indicated above). Vanguard then filed its notice of appeal, and subsequently, this court's decision in the prior appeal was issued.

I

Vanguard initially asserts in the instant appeal that the declaration that it owed a duty to defend the Amphitheatre and Rainbow was improper, as the trial court erroneously found that section 154 of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 766) precluded Vanguard from making a showing of a material misrepresentation made by the insured. The material misrepresentation, Vanguard asserts, occurred when a principal of the named insured fraudulently designated Amphitheatre, Rainbow, and others as additional insureds.

Vanguard cites the language of endorsement number 3, that "CO-PROMOTERS AND BUILDING OWNERS, MANAGERS, LESSORS AND LANDLORDS SHALL BE COVERED AS ADDI-

TIONAL INSUREDS." Vanguard asserts that endorsement number 3 is similar to an omnibus clause or an extended coverage clause in an automobile liability policy, which provides coverage to the owner of the vehicle and to persons driving the vehicle with the permission of the owner-insured. The insurer, pursuant to such clauses, has a duty to defend additional insureds as well as the named insured. However, the insurer has no duty to defend a person who does not fall within the class of persons defined as additional insureds by the policy.

Vanguard contends that Al-Par, Maryland, and Talent had nothing to do with the subject concert, such as promotion, production, supervision, or the receipt of money. Rather, Vanguard asserts that Jeffrey Sharp of Maryland and Talent fraudulently represented to Vanguard that Maryland was involved with the concert (apparently in promotion), in order to obtain insurance for the concert for Quentin Perry.

Vanguard contends that since Maryland, Talent, and Al-Par were not copromoting the concert, Rainbow could not be a copromoter within the meaning of endorsement number 3, and Amphitheatre could not be a location covered by the policy. Vanguard asserts that Sharp's misrepresentation was material since the policy was written to cover only concerts copromoted or coproduced by Maryland or Al-Par, and therefore, the misrepresentation voided the contract of insurance.

Vanguard contends that the facts showing the material misrepresentations were revealed through deposition testimony. Vanguard cites pages in the record which are excerpts from the depositions of Albert Parnes, an officer of Al-Par; Jeffrey Sharp of Maryland and Talent; and Larry Caine, manager of the Amphitheatre. Parnes testified that he was not involved with the concert and did not receive any financial benefit from the concert. Sharp testified that neither Maryland nor Talent had a lease agreement with Amphitheatre for the use of the arena for December 29, 1981. Maryland's only involvement with the concert was that it obtained insurance for those involved with the concert.

· Vanguard failed, however, to include in the record on appeal complete transcripts of the depositions referenced, and rather, included only a few excerpted pages from each deposition. For example, Vanguard cites to a page in the record of the deposition transcript of Albert Parnes, where he stated that he "wasn't involved in the concert in any respect." Vanguard failed to include in the record the previous page of the deposition transcript which indicated what question

Parnes was answering when he gave that response. This court cannot purport to review deposition testimony which is not presented in its full context.

A reviewing court may review the trial court action solely on the record. (*Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 447 N.E.2d 834.) It is the duty of the appellant to present a complete record on appeal so the reviewing court will be fully informed regarding the issues in the case. A reviewing court will not consider anything which is not contained in the record. (*People v. Hermann* (1986), 150 Ill. App. 3d 224, 501 N.E.2d 842.) This court, therefore, must rely on the trial court's finding that Vanguard's assertions regarding the alleged misrepresentation were insufficiently supported by the evidence. See *Roberts v. National Liberty Group of Cos.* (1987), 159 Ill. App. 3d 706, 512 N.E.2d 792.

Even assuming that sufficient evidence was preserved of record, we agree with the trial court that section 154 of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 766) precludes Vanguard from asserting the misrepresentation. Section 154 provides:

"No misrepresentation or false warranty made by the insured *** in the negotiation for a policy of insurance *** shall defeat or avoid the policy *** unless such misrepresentation *** shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." Ill. Rev. Stat. 1987, ch. 73, par. 766.

Vanguard contends that section 154 does not preclude it from bringing evidence to prove the alleged misrepresentations, since the alleged misrepresentation did not occur in Al-Par or Maryland's initial application for insurance coverage from Vanguard. Rather, all the negotiations for that policy were already completed, and the policy was in effect for some time before the certificate of insurance was issued for the December 29, 1981, concert. Vanguard cites *Carroll v. Preferred Risk Insurance Co.* (1965), 60 Ill. App. 2d 170, 176, 208 N.E.2d 836, *aff'd* (1965), 34 Ill. 2d 310, 215 N.E.2d 801, for the proposition that the purpose of section 154 is to preclude the insurer from charging misrepresentation of facts which have occurred up to and at the time an application for insurance is executed. In any event, Vanguard asserts, compliance with the statute has been made.

The only fact misrepresented was the identity of the certificate holder. The fact appears in writing and appears in the certificate of insurance, since the fact was misrepresented by the very act of designation.

We find, however, that the alleged misrepresentation occurred during the application for the insurance as anticipated by the statute. Vanguard asserts that the insureds misled Vanguard regarding who was involved in the concert and who should be named as additional insureds on the policy. The misrepresentation allegedly occurred during the telephone conversation regarding the issuance of the certificate of insurance. Vanguard issued the certificate only after it was informed regarding the concert date and the additional insureds. Upon receiving the required information, Vanguard issued a change endorsement to the policy, which substantially affected the terms of the general policy, in order to provide coverage for the specific event and the additional insureds referenced in the endorsement. Thus, it was not until the telephone contact was made and the necessary information provided to Vanguard that coverage was extended.

Since we find that these circumstances come within the "negotiation for a policy of insurance" provided for in the statute, Vanguard was required to meet all of the requirements of section 154 in order to assert a material misrepresentation by the insured, including the presence of a writing reflecting the misrepresentation. (See *Roberts v. National Liberty Group of Cos.* (1987), 159 Ill. App. 3d 706, 512 N.E.2d 792.) We agree with the trial court that since there was no writing in the policy or certificate reflecting the alleged misrepresentation, section 154 precludes the alleged misrepresentation from being a valid defense. See *Inter-Insurance Exchange of the Chicago Motor Club v. Milwaukee Mutual Insurance Co.* (1978), 61 Ill. App. 3d 928, 378 N.E.2d 391.

*Carroll v. Preferred Risk Insurance Co.* (1965), 60 Ill. App. 2d 170, 208 N.E.2d 836, *aff'd* (1966), 34 Ill. 2d 310, 215 N.E.2d 801, cited by Vanguard, is distinguishable from the instant case. In *Carroll*, the court was faced with the question, among other issues, of whether an insurer properly refused to extend coverage to an insured for an occurrence which took place after the application for insurance was completed but before the policy was issued or received by the insured. The court held that the insurer "was within its rights" in refusing coverage. (*Carroll*, 60 Ill. App. 2d at 177.) The court found that section 154 of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 766) did not bear on the case before it. The court stated that the statute applies to alleged misrepresentations of facts

which have occurred up to and at the time the application for insurance is completed, but does not alter the duty of the insured to disclose the existence of facts materially affecting the acceptance of the risk which come to the knowledge of the insured after the application is made and before the policy is issued. (*Carroll*, 60 Ill. App. 2d at 176-77.) The facts in the instant case require an interpretation of the statute not addressed in *Carroll*.

## II

Vanguard also asserts that the trial court erred in determining that the claims against Amphitheatre and Rainbow were potentially covered under the policy without looking to the policy provisions themselves. The trial court did not look to the terms of the policy for the reason that the additional insureds had obtained only the certificate of insurance, and not a copy of the policy. Vanguard contends that the trial court's determination that endorsements numbers 3 and 4 of the policy could not be considered is not supported by case law.

■ Where a contract of insurance consists of a policy and other papers or documents, executed as a part of one transaction and accompanying the policy or incorporated therein by attachment or reference, they must be construed together in order to determine the meaning and effect of the insurance contract. (*J.M. Corbett Co. v. Insurance Co. of North America* (1976), 43 Ill. App. 3d 624, 357 N.E.2d 125.) In the instant case, the certificate of insurance is an accompanying document since the main policy is referred to in the certificate by its number, GL 1041. Therefore, the certificate incorporates the policy by reference and the two documents must be read together in order to determine the meaning and effect of the policy.

The certificate of insurance, which lists Talent as the named insured and Rainbow, Amphitheatre, and the musicians as the additional insureds, provides that certain types of coverage are provided under the policy. The general liability coverage includes coverage for "COMPREHENSIVE FORM," "PREMISES-OPERATIONS," "CONTRACTUAL INSURANCE," "BROAD FORM PROPERTY DAMAGE," and "PERSONAL INJURY." The certificate states that claims arising out of the nonappearance of performers are excluded, and only indoor concerts are warranted.

The policy also sets forth types of liabilities covered. In addition, the policy contains endorsements numbers 3 and 4, which are not included in the certificate of insurance. For instance, endorsement number 4 contains an exclusion for security and crowd control not contained in the certificate. Further, endorsement number 3 of the

policy provides that coverage extends only regarding the sole negligence of the operations of the named insured. The same limitation is not contained in the certificate.

Vanguard asserts that case law supports its assertion that endorsements numbers 3 and 4 of the policy must be given effect to limit coverage in the instant case, notwithstanding the fact that the insureds did not receive a copy of the policy itself. We will review briefly pertinent case law. In *John Bader Lumber Co. v. Employers Insurance* (1982), 110 Ill. App. 3d 247, 441 N.E.2d 1306, the appellate court affirmed the trial court's granting of a motion for summary judgment in favor of the plaintiff insured and ordering the defendant insurer to defend a personal injury action filed against the insured. The plaintiff insured, which owned and leased certain real estate, obtained insurance from the defendant through its lessee, who was required by agreement to provide the plaintiff with liability coverage on the property. The master policy was issued to the lessee, while the certificate of insurance was issued to the plaintiff lessor.

The parties disputed the meaning and effect of language concerning notice of cancellation of the policy. The court found that the defendant's interpretation of the policy and certificate conflicted with an "unequivocal" provision in the certificate, and therefore, notice of cancellation was required by the terms of the certificate. (*John Bader Lumber Co.*, 110 Ill. App. 3d at 249.) The court also held that since the insured never received a copy of the policy, it could not be held to have knowledge of significant exclusions or provisions contained in the policy but not in the certificate, and that such provisions should not be considered. (*John Bader Lumber Co.*, 110 Ill. App. 3d at 249-50.) The court also held that the insured was entitled to rely on the certificate of insurance and stated that significant conditions affecting coverage and its termination should have been made known to the insured. *John Bader Lumber Co.*, 110 Ill. App. 3d at 250.

Vanguard contends that the facts of the instant case more closely parallel those in *Lezak & Levy Wholesale Meats, Inc. v. Illinois Employers Insurance Co.* (1984), 121 Ill. App. 3d 954, 460 N.E.2d 475, than those in *John Bader Lumber Co.* and a result similar to that obtained in *Lezak & Levy Wholesale Meats, Inc.* should obtain here. The court in *Lezak & Levy Wholesale Meats, Inc.* held that under the circumstances before it, although the insured received only a certificate of insurance and failed to receive a copy of the policy, the insured nevertheless was held to the policy terms. (*Lezak & Levy Wholesale Meats, Inc.*, 121 Ill. App. 3d at 957.) The court found that

the insured knew or should have known that its coverage was subject to exclusions. The court noted that the certificate specifically stated that it was not part of the policy and that the terms of the policy were controlling. (*Lezak & Levy Wholesale Meats, Inc.*, 121 Ill. App. 3d at 957.) In addition, the plaintiff "admitted an awareness that separate exclusions were to be enunciated in the policy itself." (*Lezak & Levy Wholesale Meats, Inc.*, 121 Ill. App. 3d at 957.) Further, the court found no ambiguity in reading the policy and certificate in conjunction with one another. (*Lezak & Levy Wholesale Meats, Inc.*, 121 Ill. App. 3d at 957.) In holding that the two documents excluded coverage, the court stated that "[t]here is no question but that the parties here recognized that they were required to refer to the policy in order to ascertain their rights and obligations." *Lezak & Levy Wholesale Meats, Inc.*, 121 Ill. App. 3d at 957.

In *J.M. Corbett Co. v. Insurance Co. of North America* (1976), 43 Ill. App. 3d 624, 357 N.E.2d 125, the court considered whether an indemnity clause in a certificate of insurance issued by the defendant to the plaintiff was limited by an exclusion in the insurance policy referred to in the certificate of insurance. The court found that the indemnity clause in the certificate of insurance conflicted with an exclusion provision in the main policy. Further, the pertinent exclusion did not appear on the certificate, and the main policy was not tendered to the plaintiff. (*J.M. Corbett Co.*, 43 Ill. App. 3d at 627.) The court held that the indemnity provision, when read in conjunction with the exclusion in the policy, created an ambiguity in coverage. Noting the rule that ambiguous language in an insurance contract will be construed to effect indemnification where possible, the court resolved the ambiguity in favor of the insured. *J.M. Corbett Co.*, 43 Ill. App. 3d at 626-27.

The supreme court in *Hofeld v. Nationwide Life Insurance Co.* (1975), 59 Ill. 2d 522, 322 N.E.2d 454, in discussing group insurance policies, stated that the master policy was the primary contract and must first be looked to in construing group insurance policies. (*Hofeld*, 59 Ill. 2d at 527.) The court noted that the individual insured normally sees only the certificate issued to him. If the certificate contains provisions which conflict with those in the master policy, however, the certificate normally controls. (*Hofeld*, 59 Ill. 2d at 527.) Courts have so held based on the theory that the certificates are a part of the total contract or on a theory of estoppel. See *Hofeld*, 59 Ill. 2d at 527.

Further, in *Bain v. Benefit Trust Life Insurance Co.* (1984), 123 Ill. App. 3d 1025, 463 N.E.2d 1082, the court addressed the issue of

whether a contract of insurance or a certificate of insurance was controlling regarding the effective date of coverage where the insured was issued the certificate but failed to receive a copy of the contract. The court found a conflict between the certificate and the contract regarding the date of coverage. (*Bain*, 123 Ill. App. 3d at 1031.) In holding that the effective date of coverage was determined by the certificate, the court cited the rule in *Hofeld v. Nationwide Life Insurance Co.* (1975), 59 Ill. 2d 522, 322 N.E.2d 454, that where there is a conflict between a certificate and a master contract, the certificate normally controls. *Bain*, 123 Ill. App. 3d at 1031.

■ We find that *Hofeld v. Nationwide Life Insurance Co.* (1975), 59 Ill. 2d 522, 322 N.E.2d 454, is distinguishable from the instant case in that *Hofeld* dealt with group insurance policies, which are issued by an insurer to a group policyholder such as an employer. The supreme court's analysis of the meaning and effect of the insurance policy and certificate, nevertheless, is pertinent to the instant case, as is the rule set forth in *Hofeld* that where the certificate and master policy conflict, the certificate generally controls. (*Hofeld*, 59 Ill. 2d at 527.) In this case, the policy contains, in endorsements numbers 3 and 4, significant limitations on coverage which are not contained and in the certificate. In accord with the analysis in *Hofeld*, and also that in *Bain v. Benefit Trust Life Insurance Co.* (1984), 123 Ill. App. 3d 1025, 463 N.E.2d 1082, and *John Bader Lumber Co. v. Employers Insurance* (1982), 110 Ill. App. 3d 247, 441 N.E.2d 1306, the insureds should not be held to have knowledge of significant exclusions of which they were not made aware. We find that since the policy containing the exclusions in endorsements numbers 3 and 4 was not tendered to the additional insureds here, the extent of coverage in the instant case was uncertain.

It is well settled that all uncertainty in the construction of insurance contracts should be resolved in favor of the insured. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 4-5, 429 N.E.2d 1203; *J.M. Corbett Co. v. Insurance Co. of North America* (1976), 43 Ill. App. 3d 624, 357 N.E.2d 125.) Accordingly, the conflict created in the instant case between the policy and certificate regarding exclusions in coverage must be construed in favor of Amphitheatre. Therefore, we find that the trial court properly found that Vanguard could not rely on endorsements numbers 3 and 4 to deny coverage to Amphitheatre.

*Lezak & Levy Wholesale Meats, Inc. v. Illinois Employers Insurance Co.* (1984), 121 Ill. App. 3d 954, 460 N.E.2d 475, relied on by Vanguard, is distinguishable from the instant case. In *Lezak & Levy*

*Wholesale Meats, Inc.*, the certificate specifically stated that it was not part of the policy; the court found no ambiguity between the certificate and the policy; and the insured admitted knowledge that separate exclusions were contained in the policy. (*Lezak & Levy Wholesale Meats, Inc.*, 121 Ill. App. 3d at 957.) In the instant case, there is an ambiguity in the party's agreement in that the policy contains significant exclusions not referenced in the certificate. Further, there was no showing here that the insured was aware of the additional limitations in the policy, nor was there a showing that the certificate was not part of the contract and could not be relied on. Therefore, *Lezak & Levy Wholesale Meats, Inc.* does not change the result in the instant case.

## III

Vanguard also contends that it has no duty to defend Amphitheatre and Rainbow since the policy expressly excludes claims arising out of security and crowd control, and all of the claims tendered for defense relate to security and crowd control.

██ █ In determining whether the insurer owes a duty to defend the insured, courts look to the allegations of the complaint brought against the insured. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193, 355 N.E.2d 24.) If the complaint alleges facts within the coverage or potentially within the coverage of the policy, then the insured has a duty to defend. (*Peppers*, 64 Ill. 2d at 193.) The duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of a policy while the others may not be. (*Peppers*, 64 Ill. 2d at 194.) Where a complaint alleges facts to indicate that coverage potentially exists, the duty to defend arises. (*Peppers*, 64 Ill. 2d at 193; *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 466 N.E.2d 1091.) Only where the face of the complaint clearly indicates that the claim is beyond policy coverage can the insurer justifiably refuse to defend. *Chicago & North Western Transportation Co.*, 126 Ill. App. 3d at 153; *LaRotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928.

██ We find that the tort complaints sufficiently allege facts which potentially come within coverage. In addition to alleging facts regarding security and crowd control, the complaints allege a failure by defendants properly to maintain the premises. Both the certificate of insurance and the policy itself indicate that premises liability coverage will be extended to the insureds.

The complaints allege, among other things, that Amphitheatre was the owner, operator, and manager of the subject premises. The complaints allege that each of the named defendants, including Amphitheatre and Rainbow, negligently operated, managed, maintained, and controlled the subject premises so that as a result the plaintiffs were injured. The remaining allegations of negligence relate to the tort defendants' alleged negligence in failing to provide adequate safety and security measures, failing to provide adequate safety personnel, failing to prevent the use of drugs and intoxicating beverages on the premises, and failing to call for assistance when the plaintiffs were being attacked. While the complaints do not allege specific facts to indicate in what manner Amphitheatre and Rainbow failed to maintain the premises—for example, that the entrance to the building were not maintained properly—a broad reading of the complaint of the complaint and the policy indicates that the claimed negligence comes within the coverage provided under the policy and certificate of insurance.

■■■ Construction of an insurance policy presents only a question of law and may properly be decided by summary judgment. (*Bain v. Benefit Trust Life Insurance Co.* (1984), 123 Ill. App. 3d 1025, 463 N.E.2d 1082.) In reviewing a trial court's entry of summary judgment, the reviewing court's sole function is to determine whether the trial court correctly decided that there were no genuine issues of material fact, and if there were none, whether judgment for the movant was correct as a matter of law. *Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 414 N.E.2d 865; *Van Vactor v. Blue Cross Association* (1977), 50 Ill. App. 3d 709, 365 N.E.2d 638; Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.

■ ■■ In the instant case, the trial court properly found that Vanguard had a duty to defend Amphitheatre and Rainbow, as there was no genuine issue of material fact that the underlying tort complaints alleged that the claimed negligence potentially arose out of premises operations liability, a type of liability covered by the policy and certificate of insurance.

## IV

Vanguard further contends that the trial court's order dismissing Vanguard's counterclaim and third-party complaint against Cox and Hummel must be reversed and remanded for further proceedings consistent with this court's opinion in the prior appeal in this case.

As noted by Cox and Hummel, Vanguard's notice of appeal requested only that this court reverse the dismissal of its contribution

claim against Hummel. Vanguard never requested leave to file an indemnity claim against Hummel in the trial court, nor was Hummel a party to the indemnity action or the first appeal in this matter. Cox and Hummel assert that this court has no jurisdiction to determine whether Vanguard may seek a claim for indemnity against Hummel and that Vanguard cannot ask a reviewing court for relief it failed to seek in the trial court.

■■ We hold that if Vanguard wishes to file an amended pleading seeking indemnity from Hummel, Vanguard must seek leave to do so from the trial court. (*Bell v. Yale Development Co.* (1981), 102 Ill. App. 3d 108, 429 N.E.2d 894.) Vanguard's amended counterclaim and third-party complaint against Cox and Hummel are not two separate pleadings but are combined into one document. Vanguard has stated that, in view of this court's prior decision to let stand Vanguard's original claim against Cox, Vanguard "will therefore have no need to proceed on its amended counterclaim" against Cox. Vanguard wishes, however, to file an amended third-party complaint against Hummel. The proper forum for Vanguard's request to amend its pleadings to conform with the prior decision on appeal is the trial court.

## V

In addition to the appeal raised by Vanguard, this court has before it a motion for reasonable attorney fees and costs filed by appellees Cox and Hummel pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) for their defense of Vanguard's action for contribution. Cox and Hummel contend that counsel for Vanguard admitted on record on October 7, 1987, during proceedings relating to the prior appeal in this case, that Vanguard had no basis to seek contribution under the facts of the case. Nevertheless, on October 8, 1987, one day later, Vanguard filed a notice of appeal from the trial court's dismissal of its contribution claim. Cox and Hummel contend that as of the date Vanguard filed the notice of appeal, Vanguard and its attorneys had an affirmative legal obligation either to prosecute its contribution claim on appeal or to discharge Cox and Hummel from this appeal.

■■ ■ Section 2—611 provides that a pleading, motion, or other paper must be signed by an attorney who certifies that the paper is well grounded in fact and warranted by law. If the paper is signed in violation of the statute, the court is directed to impose upon the attorney or party or both, appropriate sanctions, including an order to pay the expenses and attorney fees of the other party.

(Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) The circumstances presented by Cox and Hummel in the instant case clearly do not come within the scope of the statute. The alleged misrepresentation by Vanguard's attorney was made orally. The statute pertains only to writings. Further, the attorney's statement constitutes a misapplication of law rather than an assertion of law for which there is no support. The statement therefore is not the kind of assertion which the statute was meant to prevent. (See *Frisch Contracting Service Co. v. Personnel Protection, Inc.* (1987), 158 Ill. App. 3d 218, 511 N.E.2d 831.) Accordingly, Cox and Hummel's petition for fees is denied.

For the foregoing reasons, we affirm the judgment of the circuit court.

Judgment affirmed.

WHITE, P.J., and McNAMARA, J., concur.