LISA O'BRIEN, Indiv. and as Special Adm'r of the Estate of Maria O'Brien, Deceased, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.—EDWARD O'BRIEN, Indiv., Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 1—95—2242, 1—95—2311 cons.

Opinion filed December 20, 1996.

Bollinger, Ruberry & Garvey, of Chicago (David Barry, Jr., John Sullivan, and Kelly Giampa, of counsel), for appellants.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Thomas Bamonte, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs Edward and Lisa O'Brien filed a wrongful death action against defendant, City of Chicago (City), after an auto accident on Lake Shore Drive (the Drive) killed their mother, Maria O'Brien. Plaintiffs claim the City negligently failed to install median guardrails on the Drive, proximately causing the accident. Lisa O'Brien appeals from the circuit court's orders dismissing her sixth amended complaint and denying her leave to file seventh and eighth amended complaints. Edward O'Brien appeals the circuit court's dismissal of his second amended complaint, which had adopted Lisa's proposed allegations.

On November 11, 1986, Maria O'Brien was driving north on the Drive, with Lisa in the passenger seat. James Glenn, the other driver, was driving southbound on the Drive. Near 2700 north, Glenn attempted to pass another car, but lost control, swerved to the right side of the road, bounced off a guardrail, swerved to the left across four lanes of southbound traffic, and hit a six- to eight-inch-high grassy median. The impact lifted Glenn's car into the air and it landed on top of the O'Brien car, killing Maria and injuring Lisa. Glenn was found to have been driving while under the influence of alcohol and speeding at the time of the accident. The cause of Maria O'Brien's death was found to be vehicular homicide, of which Glenn subsequently was convicted.

Lisa and Edward O'Brien filed suit against Glenn and the City.[1] Count I of their consolidated five-count complaint alleged the City

---

[1] The same attorney filed the complaint on behalf of both O'Briens. After Lisa O'Brien turned 18, however, she became the administrator of Maria O'Brien's estate, obtained new representation, and filed a separate complaint.

On appeal, Edward O'Brien's attorney chose to stand on the briefs filed on behalf of Lisa O'Brien. This opinion will consider only the arguments raised in those briefs relating to Lisa O'Brien's complaint.

acted willfully and wantonly in failing to install a median barrier, causing serious injuries to Marie and Lisa O'Brien. Count II claimed negligence against Glenn. Count III asserted a claim against both defendants under the survival statute. 755 ILCS 5/27—6 (West 1994). Count IV alleged that the City's willful and wanton conduct and Glenn's negligence proximately caused Marie O'Brien's death, and plaintiffs' loss of society. Count V pled that Lisa O'Brien suffered emotional distress. Three months later, the O'Briens filed an amended complaint, which restated counts I and IV to allege negligent rather than willful and wanton conduct by the City. The City moved for summary judgment, but later withdrew the motion without prejudice and filed an answer to plaintiffs' complaint.

Lisa O'Brien next filed a second amended complaint, adding three counts. Counts VI and VII alleged the City owed plaintiffs a duty to install median barriers under sections 3—102(a) and 3—103(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act). 745 ILCS 10/3—102(a), 3—103(a) (West 1994). Count VIII alleged the City's conduct was willful and wanton.

The City thereafter filed a second motion for summary judgment, arguing that a statute of repose barred the O'Brien claims and that it owed plaintiffs no duty, under either the common law or the Tort Immunity Act. In response, O'Brien offered evidence that showed the City produced designs for and engineered a Lake Shore Drive reconstruction project. This evidence included two 1967 letters by City officials stating the need for median guardrails on North Lake Shore Drive; a 1979 agreement between the City and the State obligating the City to maintain City streets; a 1966 agreement, which stated that improvements to the Drive would be made according to "plans, specifications, and special provisions, prepared by and under the direction of the City"; and the affidavit of a former state transportation official explaining that the City operated and maintained the area around 2700 north on the Drive before 1986.

The circuit court denied the City's motion for summary judgment. After O'Brien filed a third amended complaint, which deleted count VIII, the City again unsuccessfully moved for summary judgment. During this time, O'Brien filed a fourth amended complaint, which no longer contained allegations against Glenn because O'Brien voluntarily dismissed him from the suit. O'Brien next filed a fifth amended complaint, which restated some of the allegations and emphasized the City's knowledge of the dangerous condition of the road and the need for its correction.

Less than one month later, Lisa O'Brien filed a sixth amended complaint, which omitted several references to the City's design of the reconstruction project and added other allegations.

The City moved to dismiss O'Brien's sixth amended complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)). In addition to restating its statute of repose argument, the City contended that the Tort Immunity Act did not create new causes of action and that the portion of O'Brien's complaint based upon the Act should be dismissed. The City further asserted that O'Brien failed to allege facts establishing the elements of a common law negligence claim. At a hearing on the motion to dismiss, the circuit court expressed its belief that O'Brien could state a claim that the City should have upgraded the safety features on the Drive because it knew or should have known that the area was unreasonably dangerous. The court explained, however, that the sixth amended complaint did not allege enough facts to support this argument and suggested that O'Brien submit a proposed seventh amended complaint, together with authority to support the cause of action.

At a hearing on the motion for leave to file the seventh amended complaint, O'Brien maintained that the complaint sufficiently alleged the City designed, maintained and exerted complete control over the Drive. O'Brien explained that once plaintiffs proved these facts at trial, the City would be held liable for voluntarily undertaking to assume responsibility for the road.

The circuit court found that plaintiffs failed to show the existence of a duty. The court first examined the 1966 maintenance agreement, which plaintiffs offered as proof that the City owed a duty. The court interpreted the agreement to give the City authority to fix potholes and repair the road's surface, but not to perform major improvements such as erecting median barriers. The agreement therefore did not impose a duty to erect the barriers.

In addition, the court examined count I of plaintiffs' seventh amended complaint to determine if it sufficiently alleged the City owed a duty under the theory of voluntary undertaking. The court found that the allegations established only that the City had notice of unsafe conditions on the Drive, but failed to show the existence of a duty to install median barriers. The court concluded that plaintiffs failed to state a cognizable claim against the City and denied O'Brien leave to file seventh and eighth amended complaints. O'Brien appeals.

## I

■ O'Brien asserts error in the circuit court's dismissal of her sixth amended complaint. When reviewing a dismissal for failure to state a cause of action, the court accepts all well-pleaded facts as true

and interprets the facts in the light most favorable to plaintiff. *Israel v. National Canada Corp.*, 276 Ill. App. 3d 454, 464, 658 N.E.2d 1184 (1995); *McCormick v. Kruk*, 220 Ill. App. 3d 449, 451, 581 N.E.2d 73 (1991). Dismissal is warranted only if, based on the pleadings, no set of facts could be proven that would entitle plaintiff to relief. *McCormick*, 220 Ill. App. 3d at 451. The appellate court exercises *de novo* review of a circuit court's order granting or denying motions to dismiss. *Kleinwort Benson v. Quantum Financial Services*, 285 Ill. App. 3d 201; *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377 (1996).

The City initially argues that O'Brien's claim is time-barred, because a 10-year statute of repose bars any claims brought more than 10 years after the reconstruction project was completed. 735 ILCS 5/13—214(b) (West 1994) (section 13—214(b)). O'Brien contends that the statute does not apply here because her complaint addresses only actions taken by the City after completing the project.

■ Section 13—214(b) provides:

"No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission." 735 ILCS 5/13—214(b) (West 1994).

Section 13—214(b) applies to all parties engaged in construction activities, including municipalities. *Gavin v. City of Chicago*, 238 Ill. App. 3d 518, 520, 606 N.E.2d 506 (1992) (*Gavin*); *Lombard Co. v. Chicago Housing Authority*, 221 Ill. App. 3d 730, 735, 587 N.E.2d 485 (1991). Municipal defendants may invoke section 13—214(b) as a defense if they participated in some way in the construction of the property at issue and are not being sued simply as owners of the property. *Gavin*, 238 Ill. App. 3d at 521; *Lombard*, 221 Ill. App. 3d at 735. In addition, section 13—214(b) applies not only to the construction of real property, but also to work performed to improve roads and highways. *Billman v. Crown-Trygg Corp.*, 205 Ill. App. 3d 916, 920-21, 922, 563 N.E.2d 903 (1990).

■ In the present case, the City participated in the construction of property when it engineered and designed the reconstruction plans and specifications used to rebuild the Drive. Furthermore, the City's work on the reconstruction of the Drive "improved" the road. The plans and specifications created by the City, and used by the County to reconstruct the Drive, made the road more attractive, safer, and easier to use. The construction qualifies as an improvement and, under section 13—214(b), any suits regarding that construction must

be initiated within 10 years. O'Brien's suit, brought more than 10 years after the reconstruction was completed, is time-barred.

O'Brien argues that section 13—214(b) is not controlling because her complaint does not allege the existing median was defectively designed. In her sixth amended complaint, she endeavored to avoid stating a claim for design defects by alleging that the City negligently "operated, maintained, repaired and altered" the Drive; "failed to alleviate or correct the dangerous condition even after applicable road safety standards changed and experience demonstrated the road was not safe"; and negligently "maintained the existing barrierless median."

In the past, section 13—214(a) has been applied only to tort cases in which the plaintiff alleges a design defect. In *Gavin*, the court noted in *dictum* that because the plaintiffs' complaint alleged defective design, rather than failure to maintain, section 13—214(b) applied to the case. *Gavin*, 238 Ill. App. 3d at 521. In contrast, *Ocasek v. City of Chicago*, 275 Ill. App. 3d 628, 656 N.E.2d 44 (1995), involving analogous facts and issues, held that plaintiff's claim was barred by section 13—214(b), citing section 13—214(b) as the "applicable statute of repose for cases predicated upon design defects." 275 Ill. App. 3d at 631.

Although O'Brien avoids using the term "design defect," the underlying cause of action in the present case is essentially the same as in the design defect cases, that the City created and maintained a dangerous condition. The crux of O'Brien's complaint is the dangerousness of the existing median, requiring that a new median be installed, and is a claim for defective design in a different form. Section 13—214(b) bars her claim.

O'Brien relies on *Cole v. City of East Peoria*, 201 Ill. App. 3d 756, 559 N.E.2d 773 (1990), as support for her contention that section 13—214(b) does not apply to the present case because the allegations focus on the City's subsequent failure to correct the dangerous condition, and not on the initial design. Defendant in *Cole* did not raise section 13—214(b) as a defense to liability. In addition, plaintiff there alleged specific facts establishing affirmative actions taken by defendant less than four years before the accident in *Cole* occurred. The *Cole* plaintiff also alleged that the defendant knew its recent actions created a dangerous situation, but did not remedy the situation. 201 Ill. App. 3d at 757. In the present case, however, O'Brien does not allege that the City took any recent affirmative action that increased the dangerous condition of the Drive. The sixth amended complaint claims that the City failed to correct a dangerous condition it created in the 1972 reconstruction project, a claim time-barred by section 13—214(b), as noted above.

■ The parties also dispute whether O'Brien stated a cause of action for ordinary negligence. In order to establish a negligence claim, plaintiff must allege facts demonstrating that defendant owed plaintiff a duty, which defendant breached, and plaintiff suffered injuries or damages proximately caused by the breach. *Rowe v. State Bank*, 125 Ill. 2d 203, 215, 531 N.E.2d 1358 (1988); *Pelham v. Griesheimer*, 92 Ill. 2d 13, 18, 440 N.E.2d 96 (1982).

■ The City argues that O'Brien failed to offer facts sufficiently alleging the existence of a duty. The determination of whether a duty exists is a legal issue that must be decided by the court. *Sisk v. Williamson County*, 167 Ill. 2d 343, 346, 657 N.E.2d 903 (1995); *McLane v. Russell*, 131 Ill. 2d 509, 514, 546 N.E.2d 499 (1989). O'Brien contends that the City owes her a duty by virtue of sections 3—102(a) and 3—103(a) of the Tort Immunity Act which, she asserts, codify the common law duty owed her by the City. 745 ILCS 10/3—102(a), 3—103(a) (West 1994).

The traditional common law rule imposes a duty on municipalities to maintain public property in a reasonably safe condition. This duty mandates that municipalities maintain the property, but does not require that they make public improvements. *Ross v. City of Chicago*, 168 Ill. App. 3d 83, 87, 522 N.E.2d 215 (1988) (*Ross*); *Horrell v. City of Chicago*, 145 Ill. App. 3d 428, 432, 495 N.E.2d 1259 (1986) (*Horrell*). Municipalities are not liable for failure to make improvements, even if authorized to do so by an ordinance, unless they actually undertake the improvement. *Ross*, 168 Ill. App. 3d at 87; *Horrell*, 145 Ill. App. 3d at 432. Sections 3—102(a) and 3—103(a) codify these duties but do not impose any new obligations on local governments. *Horrell*, 145 Ill. App. 3d at 435.

■ This court previously has held that the City has no duty to erect median barriers on the Drive. *Ross*, 168 Ill. App. 3d at 91; *Charpentier v. City of Chicago*, 150 Ill. App. 3d 988, 995, 502 N.E.2d 385 (1986) (*Charpentier*). In some cases, however, the City may owe a duty to remove a median strip that creates an unreasonably dangerous condition on the road. *Santelli v. City of Chicago*, 222 Ill. App. 3d 862, 868, 584 N.E.2d 456 (1991). In *Santelli*, the court distinguished plaintiff's allegations from those found in the *Charpentier* and *Ross* decisions. In *Santelli*, the plaintiff alleged that the existing median strip on an "S" curve constituted an unreasonably dangerous condition. 222 Ill. App. 3d at 865, 868. In contrast, in *Charpentier*, the plaintiffs alleged failure to install a barrier, and in *Ross*, plaintiffs articulated failure to replace the median strip with a median barrier. *Ross*, 168 Ill. App. 3d at 88; *Charpentier*, 150 Ill. App. 3d at 990.

■ The present case is similar to *Ross* and *Charpentier* in that

plaintiffs in all three cases claimed the City owed a duty to erect median barriers on the Drive. O'Brien's complaint states that the median strip should have been replaced with a barrier, focuses on the City's failure to do so, but fails to establish that the City owes a duty to erect median barriers.

The circuit court did not err in dismissing O'Brien's sixth amended complaint. Her claim is time-barred and failed to sufficiently allege the duty element of a negligence claim. In light of this holding, we need not address other issues raised by the parties with regard to this complaint.

## II

■ O'Brien also argues that the circuit court abused its discretion by denying her leave to file a seventh amended complaint. Section 2—616(a) of the Code of Civil Procedure permits parties to amend their pleadings on "just and reasonable terms," and "[a]t any time before final judgment." 735 ILCS 5/2—616(a) (West 1994). Furthermore, section 2—616(c) provides that a "pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs." 735 ILCS 5/2—616(c) (West 1994).

These provisions require that motions to amend pleadings be liberally granted to enable parties to present fully their causes of action. *Jeffrey M. Goldberg & Associates v. Collins Tuttle & Co.*, 264 Ill. App. 3d 878, 885, 637 N.E.2d 1103 (1994) (*Goldberg*); *Weldon v. Hawkins*, 183 Ill. App. 3d 525, 533, 539 N.E.2d 229 (1989). Courts should permit amendment if it would further the interests of justice. *Weldon*, 183 Ill. App. 3d at 534; *Williams v. Northwestern University*, 147 Ill. App. 3d 374, 380, 497 N.E.2d 1226 (1986). Parties do not, however, enjoy an absolute right to amend their pleadings. *Baker v. Walker*, 173 Ill. App. 3d 836, 841, 528 N.E.2d 5 (1988).

■ The circuit court's determination whether to grant or deny amendments to pleadings is a matter of discretion, which may not be reversed absent discretionary abuse. *In re Estate of Hoover*, 155 Ill. 2d 402, 416, 615 N.E.2d 736 (1993); *Jessen v. Sverdrup & Parcel & Associates, Inc.*, 218 Ill. App. 3d 901, 904, 579 N.E.2d 14 (1991). To determine whether discretion has been abused, four factors are considered: whether (1) the proposed amendment would cure the defective pleading; (2) other parties would suffer prejudice or unfair surprise because of the proposed amendment; (3) the proposed amendment is timely; and (4) previous opportunities to amend the pleading could be identified. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273, 586 N.E.2d 1211 (1992); *Goldberg*, 264 Ill. App. 3d at 885.

The only factor involved in the present case is whether the additional allegations in the seventh amended complaint cured the defects found in the sixth amended complaint. O'Brien attempted to cure the first defect, the allegation of defective design that time-barred her claim, by alleging instead that the existing median was unreasonably dangerous and by omitting any references to the City's failure to install a median barrier. The seventh amended complaint alleges that at the time of the 1986 accident, the City "controlled, possessed, maintained, constructed, supervised and operated" the Drive area near 2700 north. The complaint further claims that the City "had unique knowledge" that the increased use of the Drive rendered existing conditions unreasonably dangerous. In addition, the complaint states that the City negligently failed to remove the unreasonably unsafe conditions. These statements, in contrast to those in the sixth amended complaint, do not expressly allege that the existing median was defective when originally designed by the City.

We need not decide, however, whether section 13—214(b) applies to tort cases that do not include design defect claims, because O'Brien's claim must be dismissed for failure to allege sufficiently the duty element of her negligence claim. O'Brien attempted to correct this second defect in her complaint, alleging that the City voluntarily assumed a duty by designing the reconstruction project in the 1960s; providing "complete operational and maintenance services," including police protection for the Drive; conducting traffic safety studies and traffic accident recordkeeping; and advising the State of the dangerous condition of the Drive.

██ The doctrine of voluntary undertaking recognizes that one who undertakes to render services to another can be liable for injuries caused by the failure to exercise due care when performing the undertaking. The scope of the duty of care, however, is limited to the extent of the undertaking. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 239, 665 N.E.2d 1260 (1996) (*Rhodes*). The doctrine is based upon the proposition that one who assumes to act, although gratuitously, is dutybound to act carefully. *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 74, 199 N.E.2d 769 (1964).

Many of the courts' decisions regarding the voluntary undertaking theory primarily rest on policy principles. For instance, in *Rhodes*, plaintiff claimed the railroad voluntarily undertook a duty to aid decedent when its employees called the police after finding decedent lying down in a waiting room. The *Rhodes* court disagreed, holding the railroad could not be liable, because a contrary holding "would discourage citizens from taking even this most basic action to obtain assistance for an injured stranger." *Rhodes*, 172 Ill. 2d at 240.

In *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 605 N.E.2d 557 (1992) (*Frye*), the court similarly declined to extend the voluntary undertaking theory, holding that a pharmacist was not liable for naming some, but not all, of a medication's side effects, in belief that a contrary holding might cause pharmacists to "refrain from placing any warning labels on containers," depriving consumers of warnings that might be beneficial. 153 Ill. 2d at 33.

The voluntary undertaking theory generally has been recognized when one party agrees to provide security services for another. *Cross v. Wells Fargo Alarm Services*, 82 Ill. 2d 313, 317, 412 N.E.2d 472 (1980); *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 374 N.E.2d 1055 (1979). Although there may be no common law duty to protect others, when a party voluntarily undertakes such protection, a duty arises to exercise reasonable care. *Cross*, 82 Ill. 2d at 317.

■ O'Brien contends that the voluntary assumption rule should be applied in the present case because the City voluntarily agreed to protect others by maintaining the roads and studying traffic patterns. If these actions formed the basis for a voluntary undertaking, however, every municipality that repaired roads within its jurisdiction would face liability for any accidents occurring on those roads. Municipalities might refrain from conducting even minor repairs in order to avoid this liability, resulting in a greater number of accidents. *Frye*, 153 Ill. 2d at 33. In addition, the performance of minor repairs such as filling potholes and resurfacing roads cannot be considered a voluntary undertaking by the City to reconstruct the road completely.

The circuit court therefore did not abuse its discretion in denying O'Brien leave to file a seventh amended complaint.

### III

O'Brien lastly urges circuit court abuse of discretion by denying her leave to file an eighth amended complaint. O'Brien insists that the complaint would correct defects found in the seventh amended complaint. The record does not contain the proposed eighth amended complaint.

■ This court may not decide the merits of a proposed complaint that has not been made part of the record. An appellant has the burden of presenting the reviewing court with a sufficiently complete record that would support a claim of error. *Cruz v. Columbus-Cuneo-Cabrini Medical Center*, 264 Ill. App. 3d 633, 639, 636 N.E.2d 908 (1994); *International Amphitheatre Co. v. Vanguard Underwriters Insurance Co.*, 177 Ill. App. 3d 555, 564, 532 N.E.2d 493 (1988). A reviewing court may not consider any matter that is not contained in the record. *International*, 177 Ill. App. 3d at 564.

O'Brien claims the court's decision in *Northrup Corp. v. Crouch-Walker, Inc.*, 175 Ill. App. 3d 203, 212, 529 N.E.2d 784 (1988), is dispositive of this issue. In *Northrup*, the court found that plaintiff stated a legally cognizable claim in its second amended third-party complaint and should have been granted leave to file a third amended third-party complaint to allege additional facts. 175 Ill. App. 3d at 206, 213. In contrast to plaintiff in *Northrup*, in the present case, O'Brien failed to state a legally cognizable claim in either her sixth amended complaint or her seventh amended complaint.

O'Brien also notes this state's liberal pleading rules. Nevertheless, a reviewing court will not "tread beyond the record" and speculate as to what O'Brien might allege in an amended complaint. *In re Marriage of Glessner*, 119 Ill. App. 3d 306, 313, 456 N.E.2d 311 (1983).

For the reasons stated above, the decision of the circuit court is affirmed.

Affirmed.

DiVITO and BURKE, JJ., concur.