wright v board of education

1-01-2348 

ANITA WRIGHT, ) Appeal from the

)    Circuit Court of

Plaintiff-Appellant, ) Cook County.

) 

v. ) 

) No. 98 L 11894

)

THE BOARD OF EDUCATION OF THE )

CITY OF CHICAGO, ) Honorable

) Mary Mulhern,

Defendant-Appellee. ) Judge Presiding.

JUSTICE REID delivered the opinion of the court:

Anita Wright sustained personal injuries on September 15, 1998, when she fell while leaving a school under the control of the Board of Education of the City of Chicago (Board).  Wright brought an action against the Board to recover damages for her injuries.  After ruling adversely on plaintiff’s second amended complaint, the trial court granted leave to file a third amended complaint.  Thereafter, the Board filed another motion for summary judgment.  In granting the Board’s motion for summary judgment, the trial court ruled the claim was time-barred by the construction statute of repose, section 13-214(b) of the Code of Civil Procedure.  (735 ILCS 5/13-214(b) (West 1998)).  This appeal followed.  

BACKGROUND

On September 15, 1998, during her first visit, Wright  fell upon exiting the main entrance of Carter G. Woodson South Elementary School (the school).  She was at the school to register her two children for school.  She mistakenly entered the adjacent Woodson North school, then walked through to Woodson South.

The fall occurred as Wright exited the middle door of the main entrance.  Wright fell, even though the step immediately outside the doorway was at the same level as the surface inside the doorway.
(footnote: 1)  The location and size of the step immediately adjacent to the main entrance remained unchanged from its condition on the date the building was opened in 1965.  As a result of her fall, Wright sustained a fracture of the ankle requiring surgery.  Wright sued the Board of Education of the City of Chicago, the entity that built the school in1965 and continues to maintain it to the present day.  

Anthony Castleman was able, from his workstation at a desk just inside the middle door of the main entrance, to see Wright fall.  He observed her lead with her left foot across the doorway and fall down.  He indicated that she did not come into contact with the step that was adjacent to the doorway at the same level as the floor at the threshold.  Castleman also indicated that he has observed many people miss the step when exiting the building.  When asked, Castleman further indicated that he saw people having problems exiting the school on a weekly basis.  

At the Board’s request, Victor Kuchler, a licensed architect, reviewed the original building plans and photographs of the doorway.  Suzanne Glowiak, who holds a bachelor’s degree in mechanical engineering, also reviewed the materials.  Both described the step as a slab adjacent to the doorway, akin to a cut limestone sill.  They both indicate that a downward step would be required to traverse from the level of the floor in the building to ground.  When Wright strode out of the school, she apparently missed the step.  Wright indicated that the step was neither broken nor indented.  Wright also indicated that there was no liquid, debris or garbage on the step.  Wright testified that she fell because she extended her foot away from the building beyond the step.  As a result, Wright stepped onto the ground at a lower level than the step’s tread.  

Wright's original complaint sought to impose liability on the Board for violations of unidentified national codes pertaining to exits because the step landing was not as wide as the exit door and for failure to warn.  The first amended complaint asserted liability for violations of section 13-160-300(c) the Chicago Municipal Code.  Chicago Municipal Code §13-160-300(c) (1990).  In the second amended complaint, Wright claimed the Board violated the Chicago Municipal Code because the step’s tread was not 10 inches wide, the placement of the desk by the door interfered with egress, and the step’s height of two risers plus the width of the tread exceeded 27 inches.  Wright also argued that the Board violated Article XXII of the Cook County building ordinance because the floor level inside the door did not continue outside for the distance of the door’s width, the doorway led to a step rather than a door-width landing, the step’s tread was not 10 inches wide, the step had no guard or handrails, and the placement of the desk interfered with egress.  Cook County Building Ordinance, Article XXII, Sections 22.5-3; 22.6-1(c).  Wright further alleged that the Board violated the BOCA National Building Code and failed to warn of the drop-off.  

The Board filed a motion for summary judgment asserting that the construction statute of repose time-barred the claims in the second amended complaint.  735 ILCS 5/13-214(b) (West 1998).  The trial court granted the motion on July 31, 2000.  Wright filed a motion to reconsider, which was denied with leave to file a third amended complaint.  

The third amended complaint asserted that the Board violated sections of the Chicago Municipal Code which state that existing buildings shall comply with all applicable exit requirements and allegedly impose a duty on the Board to modify the means of egress.  The Municipal Code allegedly requires a four-foot platform outside an above-grade door.  Wright also alleged violations of the Chicago Municipal Code because the desk was in the way and because the stair’s tread was less than 10 inches.  Wright also alleged violations of Article XXII of the Cook County building ordinance that requires a landing outside an exit door at least as wide as the door’s width.   Cook County Building Ordinance, Article XXII, Section 22.5-3.  Finally, Wright argued that the Board failed to warn of the drop-off.  

The Board filed another motion for summary judgment based on the construction statute of repose.  Fully briefed, this motion was denied.  Upon the Board’s motion to reconsider, the trial court granted the motion and dismissed the third amended complaint.

ARGUMENTS OF THE PARTIES

Wright argues that the cause of action is not time-barred by the construction statute of repose, a statute implemented to protect engineers, architects and contractors from stale claims regarding the design and construction of buildings.  Wright argues that the Board has a duty to maintain its premises pursuant to the Premises Liability Act (740 ILCS 130/2 (West 1998)), as well as the Chicago Municipal Code.  Wright argues that the construction statute of repose does not apply to actions against landowners where the action is based upon the defendant’s status as a landowner and not on an act or omission in the design, planning, supervision, observation or management of construction.  Wright claims that, in the capacity as the entity responsible for maintaining the property in a reasonably safe manner, the Board failed to comply with the exit requirements for existing buildings or warn of the potential danger.  Wright also claims that there existed an unreasonably  dangerous condition at the location of the school, which was in violation of the Chicago Municipal Code and the Premises Liability Act.  She also argues that to apply the construction statute of repose to a case where the landowner has a duty to maintain its premises in a reasonably safe condition would circumvent public policy.

Wright also argues that the construction statute of repose does not apply where the landowner has a duty to maintain the premises.  Wright argues that, pursuant to section 13-196-050 of the Chicago Municipal Code (formerly section 34), “existing buildings shall comply with all applicable exit requirements of the Code.”  Chicago Municipal Code §13–196– 050 (1990)

Wright next argues that 
O’Brien v. City of Chicago
, 285 Ill. App. 3d 864 (1996), relied upon by the trial court in determining that the cause of action was time-barred, is not applicable to the case at bar.   Wright argues that 
O’Brien
 is factually distinguishable because, in that case, there were no statutory violations.  That case also does not address a situation where a landowner has a duty pursuant to the Premises Liability Act.  

The Board argues that the trial court was correct in its interpretation of the construction statute of repose.  The Board argues that, on its face, the construction statute of repose protects anyone who engages in the enumerated activities.  The Board also argues that, contrary to the primary theme of the appeal, landowners may rely upon the construction statute of repose.  Their status as owners is irrelevant.  The construction statute of repose sets an absolute outer time limit on when an action can be brought.

The Board also argues there is no reasonable basis for Wright to deny that the construction of Woodson South does not qualify as an improvement to the Board’s property.  As a body politic, the Board argues it is considered a person for purposes of the construction statute of repose.  The Board argues that it engaged in acts enumerated under the construction statute of repose when it created the school building, complete with the exit and the step.  It argues that the construction statute of repose applies to any acts and omissions in the performance of the enumerated activities.  Wright's cause of action blames her injuries on a step that is the same now as it was in 1965 when the school building was originally built.

The third amended complaint alleges violations of numerous sections of three different building codes, based upon the step’s width, the failure to warn of the drop-off, and the placement of the desk near the door.  The Board argues that the desk allegations should be considered waived because Wright never mentioned in depositions that the desk was a reason why she fell.  Eyewitness Castleman testified that no one needed to go around the desk to get out of the building.  Also the Board claims that, because Wright’s brief makes no mention of the desk in urging reversal, any issue as to the desk should be considered waived.  As to the failure to warn, though it is mentioned in the brief, it should be treated as waived because she does not argue this theory of liability escapes the construction statute of repose for any specific reason.  Additionally, the Board argues that section 3-108 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 
et
 
seq
. (West 1998)) immunizes a local public entity or a public employee from liability for injury caused by a failure to supervise an activity, or failure to supervise the use of any public property.  745 ILCS 10/3-108 (West 1998).  The Board argues that, because the purpose of a warning is to control one’s use of property, the failure to warn involves improper supervision, and section 3-108 protects against liability for such a failure.  The Board argues that, even if Wright had not waived argument about the alleged failure to warn of the drop-off, section 3-108 would immunize the Board against liability for that failure.  

The Board also argues that 
O’Brien
 applies whether Wright uses the phrase “design defect” or bases her entire claim on the fact that the step was 9.5 to10 inches wide rather than a 4- foot-wide platform or landing.  She essentially seeks to impose liability for a failure to rectify a supposedly dangerous condition it created in designing and building the school back in 1965.

Next, the Board argues that the duty to maintain property does not encompass a duty to improve it.  Wright claims the duty extends to require the Board to keep the property up to the current building codes.  Wright cannot maintain that the Board failed to maintain the step.  It is the same now as it was 35 years ago.  The Board disputes Wright’s claim that there are building code violations at work here.  One of the experts, Ms. Glowiak, claimed that the step was in violation of the 1962 Chicago Municipal code when the building was built in 1965.  The Board disputes that claim.  The Chicago Municipal Code provision at issue reads:

“Where the grade floor is not more than six feet above the ground level outside the building, access from an outside exit to a public way, yard or court 
may be
 by way of an outside platform having a dimension in the direction of travel not less than four feet and connecting to grade level with steps having treads, risers, and railings ***.”  (Emphasis added.)  Chicago Municipal Code §67-8(b) (1962).

The Board argues that the rules of statutory construction make the word “may” permissive and not mandatory.  While the Chicago Municipal Code allows an exit through a door above grade level by means of a four-foot platform, it does not mandate one.  Further, the Board argues that, back in 1965 when the school was built, the Board would never have gotten a use and occupancy permit if there was a problem with the exit.  Even if the step violated the Chicago Municipal Code, that violation only constitutes 
prima facie
 evidence of negligence.  It is not negligence 
per se
.  It would be error to treat code violations as resulting in strict liability.  

ANALYSIS

Initially we note that this appeal was taken from the trial court’s decision to grant a motion to reconsider its denial of a motion for summary judgment.  In so doing, the trial court granted the underlying summary judgment in favor of the Board.  In appeals from summary judgment rulings, our review is 
de novo
.  
Traveler’s Insurance Co. v. Eljer Manufacturing, Inc.
, 197 Ill. 2d 278, 292 (2001), citing 
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 390 (1993); 
Outboard Marine v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90 (1992); 
Morris v. Margulis
, 197 Ill. 2d 28, 35 (2001).  Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  
General Casualty Insurance Co. v. Lacey
, 199 Ill. 2d 281, 284 (2002), citing 735 ILCS 5/2-1005(c) (West 2000).  

At the summary judgment stage, plaintiffs are not required to prove their cases.  
Jackson v. TLC Associates, Inc.
, 185 Ill. 2d 418, 423 (1998), citing 
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 256 (1996).  The purpose of summary judgment is not to try a question of fact, but simply to determine whether one exists.  
Jackson
, 185 Ill. 2d at 423, citing 
Watkins v. Schmitt
, 172 Ill. 2d 193, 203 (1996).  “Although the use of summary judgment aids in the expeditious disposition of a lawsuit, ‛[s]ummary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt.’”  
Traveler’s Insurance
, 197 Ill. 2d at 292, quoting 
Outboard Marine
, 154 Ill.2d at 102.  In considering a summary judgment motion, the court has a duty to construe the evidence strictly against the movant and liberally in favor of the nonmoving party.  
Traveler’s Insurance
, 197 Ill. 2d at 292, citing 
Outboard Marine
, 154 Ill.2d at 131-32.

Illinois Courts are split on the application of the construction statute of repose, which reads as follows:

“No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission.” 735 ILCS 5/13-214(b) (West 1998).

The construction statute of repose applies to all parties engaged in construction activities, including municipalities.  
O’Brien
, 285 Ill. App. 3d at 869, citing 
Gavin v. City of Chicago
, 238 Ill. App. 3d 518, 520 (1992).  It was enacted for the express purpose of insulating all participants in the construction process from the onerous task of defending against stale claims.  
MBA Enterprises, Inc. v. Northern Illinois Gas Co.
, 307 Ill. App. 3d 285, 288 (1999).  The first step is to determine whether the item at issue is an improvement to real property.  The Illinois Supreme Court has defined this as “whether the addition was meant to be permanent or temporary, whether it became an integral component of the overall system, whether the value of the property was increased, and whether the use of the property was enhanced.”  
St. Louis v. Rockwell Graphic Systems, Inc.
, 153 Ill. 2d 1, 4-5 (1992).  Next, if an item is an improvement, the court must determine whether section 13-214(b) applies.  That requires that the claiming party participate in the design, planning, supervision, observation, or management of construction, or construction of an improvement.  735 ILCS 5/13-214(b) (West 1998).  

The application of the construction statute of repose is divided when it comes to parties, such as landowners, who have continuing involvement with the property after the construction work is completed.  These are claims for the negligent failure to correct a defective improvement to real property.  A nonowner designer would be protected from all defective-design claims whereas an owner, who properly maintains the property, could be held liable for the same design defect.  If we opt to draw no distinction between landowners and nonowner designers and builders, the landowners would be liable for negligent maintenance claims but protected from stale claims that the design was defective.

In 
O’Brien
, an automobile accident caused a death when a vehicle struck a median, flipped over and landed on top of the decedent’s vehicle, which was traveling in the opposite direction.  Municipal defendants may invoke section 13-214(b) as a defense if they participated in some way in the construction of the property at issue and are not being sued simply as owners of the property.  
O’Brien
, 285 Ill. App. 3d at 869, citing 
Gavin
, 238 Ill. App. 3d at 520-21.  In 
O’Brien
, the city engineered and designed the reconstruction of the roadway, which in turn improved the road.  Section 13-214(b) has been held to apply, not only to the initial construction, but also to work performed to improve the roads and highways.  
O’Brien
, 285 Ill. App. 3d at 869, citing 
Billman v. Crown-Trygg Corp.
, 205 Ill. App. 3d 916, 920-21 (1990).  This court, in deciding 
O’Brien
, held that if a court is dealing with a cause of action over either the initial construction or an improvement as defined by the statute, it must be initiated within the 10-year statutory period or it is time-barred.

The other approach taken by Illinois courts is that, even after the 10-year statutory period, a party who is in a position to correct a design defect loses the protection of section 13-214(b).  
MBA Enterprises, Inc. v. Northern Illinois Gas Co.
, 307 Ill. App. 3d 285 (1999).  In 
MBA
, a hotel was damaged in a gas explosion.  The operator of the hotel sued the gas utility provider that designed and installed the gas piping system.  The 
MBA
 court declined to follow 
O’Brien
, holding that there is an ongoing duty of care to operate and maintain the subject matter of the purported application of the construction statute of repose in a safe manner.  
MBA
, 307 Ill. App. 3d at 288, citing 
Metz v. Central Illinois Electric & Gas Co.
, 32 Ill. 2d 446 (1965) (“those who furnish gas must exercise a degree of care commensurate to the danger of supplying gas and use precaution to prevent injury”).  
MBA
 went on to state that “[t]o the extent that 
O'Brien
 holds that the statute of repose bars any cause of action for negligence that may arise after the construction or installation of an improvement when the underlying claim is a defective design or construction claim, we decline to follow that case.”  
MBA
, 307 Ill. App. 3d at 288-89.  In an 
MBA
-based approach, a landowner can be held liable for a breach of the ongoing duty of care.  
O’Brien
 and its progeny draw no distinction based upon the status of the party attempting to assert the defense of the construction statute of repose.  

It is important to note that the current version of the construction statute of repose, unlike a previous version that was held to be unconstitutional, contains no express provisions excluding any group based upon its status.  In fact, if we examine the construction statute of repose as a continuum from its inception to the present day, the legislature seems to intend that we eliminate consideration of status.  
People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.
, 114 Ill. 2d 252, 261 (1986).  The 
Skinner
 court, unfortunately dealing with section 13-214(a) and not section 13-214(b), held that “[t]he current statute, however, does not exclude persons based upon their status.  It protects, on its face, anyone who engages in the enumerated 
activities
.  This court has given particular deference to legislative classifications when those classifications are based upon activities rather than status.”  (Emphasis in original.)  
Skinner
, 114 Ill. 2d at 261.  Though the Illinois Supreme Court was dealing with a different subsection of section 13-214, the point it made is essentially the same.

In comparing the 
O’Brien
 and 
MBA
 approaches, we conclude that this case is more akin to 
O’Brien
.  The factual element in 
MBA
 that makes it different is that the ongoing duty of care related to the presence of explosive gasses in the instrumentality at the heart of that case.  This is hardly an analogous case, as Wright tripped over a concrete step that remained unchanged from 1965 until the present.  
MBA
 relies in its ruling on 
Metz v. Central Illinois Electric & Gas Co.
, 32 Ill. 2d 446 (1965).  The Illinois Supreme Court, in deciding 
Metz
, determined that “[g]as is a dangerous commodity, and the corporation which undertakes to furnish such service must exercise a degree of care commensurate to the danger which it is its duty to avoid and must use every reasonable precaution in guarding against injury to the person or property of others.”  
Metz
, 32 Ill. 2d at 450, citing 
Masters v. Central Illinois Electric & Gas Co.
, 7 Ill. App. 2d 348 (1955); 17 Ill. 
L. & Prac. Electricity & Gas
, §1, at 144 (1956).  The 
Metz
 court went on to compare gas mains to other, more mundane instrumentalities, concluding that the use, operation and maintenance of a gas main requires specialized knowledge and beyond the reach of the average citizen, both literally and figuratively.  As both 
MBA
 and 
Metz
 are factually tied instrumentalities used in conjunction with dangerous substances such as gas, these cases are inapposite to these facts.  Only the legislature can extend the explosive gas ongoing duty of care to a slab of concrete.  Since these facts fail to present an exception to the general rule, we must apply the construction statute of repose as written.  

Wright’s remaining claims are similarly unavailing.  Wright argues that, regardless of the Board’s status as the entity responsible for the design and construction of the school, fixing the step is part and parcel of a duty to maintain.  Wright claims the Premises Liability Act (740 ILCS 130/1 et seq (West 1998) imposes liability on an owner without regard to the construction statute of repose.  Wright essentially claims that fixing the step to conform with changes to statutes and ordinances is part of the duty to maintain.  This argument fails, however, because a duty to maintain and a duty to improve are two different things.    Here, for purposes of the construction statute of repose, the step is performing as it was designed to perform.  There are no allegations that the step was damaged or worn.  To apply an ongoing duty to improve the property on the Board would defeat the stated purpose of the construction statute of repose, that being the insulation of  participants in the construction process from defending against stale claims.  To apply the construction statute of repose in an even-handed manner without regard to the status to the parties is consistent with the plain language, history and previous court interpretation of the statute.  To hold otherwise would be to resurrect a previous version of the statute, which has been found unconstitutional and replaced.  Though the Premises Liability Act protects entrants onto property according to a duty of reasonable care, that act is trumped by the statute of repose on these facts because the Board is the owner of the property and the entity that participated in the design and construction of it.  

CONCLUSION

In light of the foregoing, the decision of the trial court to grant summary judgment in favor of the Board based upon the construction statute of repose is affirmed.

Affirmed.

Campbell, P.J. and Quinn, J., concur.

FOOTNOTES
1:  The parties and their experts at times refer to this step as a step, a sill and a stair.  For clarity, we will refer to the step/stair/sill as a step.