2024 IL App (3d) 230261

Opinion filed November 25, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| DOMINIC D. DiFOGGIO, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| THE COUNTY OF WILL DIVISION OF | ) | |
| TRANSPORTATION; D CONSTRUCTION, | ) | |
| INC.; NORTHERN CONTRACTING, INC.; | ) | |
| NEW LENOX TOWNSHIP; THE COUNTY | ) | Appeal No. 3-23-0261 |
| OF WILL, ILLINOIS; THE DEPARTMENT | ) | Circuit No. 19-L-119 |
| OF TRANSPORTATION; THE STATE OF | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (The County of Will, | ) | The Honorable |
| | ) | Roger D. Rickmon, |
| Defendant-Appellee). | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court, with opinion.
Justices Davenport and Peterson concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        Plaintiff Dominic D. DiFoggio was injured when his vehicle struck a concrete abutment on

a bridge located in Will County. Thereafter, plaintiff filed a complaint against Will County and

others, alleging negligence. Will County filed a motion for summary judgment, which the trial

court granted. Plaintiff appeals, arguing that Will County negligently designed, constructed, and maintained the bridge by failing to install a guardrail in the area where plaintiff's injury occurred. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        On February 17, 2018, plaintiff was driving on Schoolhouse Road in New Lenox, Will County. As he approached the bridge on Schoolhouse Road crossing Hickory Creek, his vehicle slid on ice and/or snow. Plaintiff's vehicle then crossed the roadway and eventually collided with a concrete or cement abutment at the southwest corner of the bridge. Plaintiff's vehicle was damaged, and plaintiff suffered serious injuries.

¶ 4        On February 11, 2019, plaintiff filed suit against "Will County, Illinois"; "Will County Division of Transportation" (WCDOT); D Construction, Inc.; Northern Contracting, Inc.; New Lenox Township; the Department of Transportation (IDOT); and the State of Illinois, alleging negligence. On June 19, 2019, the court entered an agreed order dismissing New Lenox Township, IDOT, and the State of Illinois as defendants.

¶ 5        In November 2019, Will County and WCDOT filed two motions to dismiss, asserting, in part, that they were immune from liability for failing to remove snow and ice from the roadway. The trial court held a hearing on the motion and found that plaintiff could not assert a cause of action for defendants' failure to remove snow and ice but could for negligent design and maintenance of the bridge. Therefore, the trial court granted the motion, dismissed the counts against Will County and WCDOT, and allowed plaintiff to file an amended complaint.

¶ 6        On December 22, 2020, plaintiff filed his third amended complaint against "County of Will, Illinois," "County of Will Division of Transportation," and others. Count I was a claim for negligence against Will County and WCDOT, alleging they had a duty to (1) design, inspect,

2

repair, and/or otherwise ensure the safety and use of roadways and bridges (and components and/or barriers thereof) owned by Will County, including the bridge on Schoolhouse Road, and (2) maintain the bridge in a reasonably safe manner and condition. Plaintiff alleged that Will County breached these duties because it "failed to properly maintain Schoolhouse Road" and "failed to ensure that Schoolhouse Road was properly and safely fit for its intended use." Specifically, plaintiff alleged that the lack of a guardrail or other barrier on the southwest corner of the bridge created "dangerous conditions" on Schoolhouse Road.

¶ 7 The parties engaged in discovery, which established that D Construction, Inc., designed the bridge on Schoolhouse Road under a contract approved by IDOT and constructed the bridge from 2005 to 2007. The guardrails on the bridge were installed by Northern Contracting, Inc., as a subcontractor. When the bridge was constructed, no guardrail was placed on the southwest corner of the bridge, but guardrails were attached to all other corners of the bridge.

¶ 8 Brian Gieske, Will County's assistant engineer, testified that his duties include constructing bridges but not inspecting or maintaining them. He testified that a private engineering firm inspects Will County bridges and that WCDOT is responsible for maintaining them. He testified there is no guardrail on the southwest corner of the bridge "[b]ecause there is an access road for the railroad facility up above." He explained: "In order to maintain access for the railroad company, that is the spot where they can get up to the railroad tracks." He was aware of no attenuating device or barrier that could be added to the southwest corner of the bridge that would still allow access to the railroad. He testified that installation of a temporary barrier or permanent attenuating device on the bridge would be a "maintenance issue."

¶ 9 John Cairns, maintenance administrator for WCDOT, testified that he oversees the day-to-day operations of the Will County's maintenance department and its personnel. He testified that

duties of his department include "plowing snow, mowing grass, trimming trees, removing animals, patching holes in the road, cleaning out ditches, cleaning culverts, applying stone to the side of the road, sweeping roadways, [and] sweeping intersections." Cairns testified that his department is not responsible for inspecting bridges or installing or repairing guardrails. He explained that repairs and installations of guardrails would be performed by an outside contractor, such as Northern Contracting, Inc. Cairns testified that the maintenance his department has performed on bridges in Will County included removing beaver dams and cleaning culverts underneath them, painting over graffiti, painting markings on roadways, and sweeping them. Cairns testified that he had no knowledge of anyone in his department ever being called to correct a safety problem on a bridge in Will County. Cairns testified that Gieske has no maintenance duties.

¶ 10 Will County and WCDOT filed a motion for summary judgment, arguing that the 10-year statute of repose related to design and construction of an improvement barred plaintiff's action (735 ILCS 5/13-214(b) (West 2022)). In their reply, Will County and WCDOT additionally asserted that sections 3-102 and 3-103 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3-102, 3-103 (West 2022)) barred plaintiff's action.

¶ 11 In March 2023, the circuit court entered an order dismissing WCDOT without prejudice, allowing the case to continue against Will County and amending the complaint to name County of Will as a defendant instead of Will County, Illinois. On June 1, 2023, the circuit court held a hearing on Will County's motion for summary judgment. The court granted the motion, finding "there is no issue of material fact."

¶ 12                                    II. ANALYSIS

¶ 13 Summary judgment is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). For purposes

4

of economy to the parties and the courts, we may affirm a circuit court's grant of summary judgment on any basis appearing in the record even if the trial court did not rely on that basis. See *Tuna v. Wisner*, 2023 IL App (1st) 211327, ¶ 55; *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992). We review summary judgment rulings *de novo*. *Ross Advertising, Inc. v. Heartland Bank & Trust Co.*, 2012 IL App (3d) 110200, ¶ 28.

¶ 14        If a plaintiff cannot establish an element of his cause of action, summary judgment for the defendant is proper. *Id.* In a negligence case, the plaintiff must set forth the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of the duty. *Ross v. City of Chicago*, 168 Ill. App. 3d 83, 86 (1988). The question of duty is one of law. *Id.* at 87. Accordingly, a motion for summary judgment may properly be granted to the defendant based on the issue of duty. *In re Estate of Elfayer*, 325 Ill. App. 3d 1076, 1080 (2001). Additionally, summary judgment is proper where a negligence claim is barred by a statute of repose, such as the construction statute of repose set forth in section 13-214(b) of the Code of Civil Procedure (Code) (735 ILCS 5/13-214(b) (West 2022)). See *Wright v. Board of Education of Chicago*, 335 Ill. App. 3d 948, 958 (2002).

¶ 15        The liability of local governments in Illinois is governed by the Act (745 ILCS 10/1-101 *et seq.* (West 2022)). *Ross*, 168 Ill. App. 3d at 87. The Act does not create new duties. *Id.* It merely codifies existing common-law duties. *Id.* Where a local government is immune from liability under the Act, summary judgment is properly entered in its favor. See *Gresham v. Kirby*, 229 Ill. App. 3d 952, 957-58 (1992).

¶ 16                              A. Negligent Design and Construction

¶ 17        Plaintiff alleges that Will County is liable for his injuries because the bridge where he was injured was negligently designed and constructed without a guardrail on its southwest corner. Will

County responds that this claim is barred by the statute of repose contained in section 13-214(b) of the Code (735 ILCS 5/13-214(b) (West 2022)) because the bridge was designed and built more than 10 years before plaintiff filed his complaint.

¶ 18    Section 13-214(b) of the Code sets forth a 10-year statute of repose for construction projects. See *Wright*, 335 Ill. App. 3d at 955. That section provides:

> "No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission." 735 ILCS 5/13-214(b) (West 2022).

Section 13-214(b) applies to local governments engaged in construction activities, including work performed on roadways. *O'Brien v. City of Chicago*, 285 Ill. App. 3d 864, 869 (1996). "It was enacted for the express purpose of insulating all participants in the construction process from the onerous task of defending against stale claims." *Wright*, 335 Ill. App. 3d at 955.

¶ 19    Section 13-214(b) applies even if the plaintiff avoids using the term "design defect" in his complaint but alleges the gist of a design defect claim—that the defendant "created and maintained a dangerous condition." *O'Brien*, 285 Ill. App. 3d at 870. Where the crux of the plaintiff's claim is that a dangerous condition existed upon completion of construction and has remained unchanged, it is a claim for defective design defect, and section 13-214(b) applies. *Id*; *Wright*, 335 Ill. App. 3d at 957-58. To apply an ongoing duty to improve the property "would defeat the stated purpose of the construction statute of repose, that being the insulation of participants in the construction process from defending against stale claims." *Wright*, 335 Ill. App. 3d at 958.

6

¶ 20 Here, plaintiff alleged that Will County was negligent by participating in the design, approval, construction, implementation, and building of a "dangerous" bridge. While plaintiff attempted to couch his complaint in terms of negligent maintenance of the bridge and roadway, plaintiff's claim is really one for a design defect. See *O'Brien*, 285 Ill. App. 3d at 870. The undisputed facts establish that the bridge was completed in 2007 with guardrails on three corners of the bridge but no guardrail on the bridge's southwest corner. The absence of a guardrail on the corner where plaintiff's injury occurred is what plaintiff claims is "dangerous." Because the crux of plaintiff's claim is that this dangerous condition of the bridge existed as of 2007, it is a claim for a design defect that plaintiff had to bring no later than 2017. See *id.* Plaintiff did not file his complaint until 2019, so his claim is time-barred. See *id.* Thus, the trial court properly granted summary judgment in favor of Will County on this claim. See *Wright*, 335 Ill. App. 3d at 955.

¶ 21                                    B. Negligent Maintenance

¶ 22 Plaintiff additionally alleges that Will County is liable for his injuries because it had an ongoing duty to properly maintain the bridge, which he contends required installation of a guardrail or other barrier in the area where he was injured. Will County responds that it had no duty to install a guardrail or other device.

¶ 23 Section 3-102(a) of the Act states:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in

7

reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2022).

¶ 24    It is well settled that a local governmental entity, such as a county, is "responsible for the negligent construction of public works and for the failure to maintain them, but has no duty, and, therefore, is not liable for its negligence or refusal to undertake such improvements initially." *Ross*, 168 Ill. App. 3d at 87. Liability only arises when the local governmental entity undertakes an improvement and the improvement itself creates an unreasonably dangerous condition. *Id.*

¶ 25    The duty to maintain is only as broad as the definition of that term. *Id.* " 'Maintain' is 'variously defined as acts of repairs and other acts to prevent a decline, lapse, or cessation from existing state or condition, *** [to] keep in repair; keep up; preserve.' " *Id.* (quoting Black's Law Dictionary 859 (5th ed. 1979)). "Maintenance involves preserving the roadway, keeping it up, not permitting it to fall into a state of disrepair, and involves, for example, the filling of potholes, or repairing deteriorated portions of the roadway." *Id.* (citing *Harding v. Chicago Park District*, 34 Ill. App. 3d 425, 429 (1975)).

¶ 26    Maintenance does not require the undertaking of public improvements, such as the erection or extension of barriers or guardrails on roadways. See *id.* at 88-89; *Elfayer*, 325 Ill. App. 3d at 1080; *O'Brien*, 285 Ill. App. 3d at 871-72; *McKinnon v. City of Chicago*, 243 Ill. App. 3d 87, 91 (1993); *Hull v. City of Chicago*, 236 Ill. App. 3d 405, 406 (1992); *Charpentier v. City of Chicago*, 150 Ill. App. 3d 988, 995 (1986). Further, a local government's duty to maintain does not extend to installing improvements at a particular location simply because the local government has installed improvements elsewhere and it would be expedient to do so at a particular location as well. See *Ross*, 168 Ill. App. 3d at 89.

¶ 27    Here, plaintiff alleged that Will County was negligent in "failing to properly maintain" the safety of the bridge by allowing it to be used without a guardrail on the southwest corner. However, Will County had no duty to erect a guardrail on that corner of the bridge because the duty to maintain a roadway does not include a duty to erect an improvement on it, such as a guardrail or other barrier. See *Elfayer*, 325 Ill. App. 3d at 1080; *McKinnon*, 243 Ill. App. 3d at 91; *Ross*, 168 Ill. App. 3d at 89; *Charpentier*, 150 Ill. App. 3d at 995. Furthermore, that guardrails were installed on the other corners of the bridge did not create a duty to install them on the corner where plaintiff was injured. See *Ross*, 168 Ill. App. 3d at 89.

¶ 28    Nevertheless, plaintiff makes much of the fact that Gieske, Will County's assistant engineer, testified that installation of a guardrail or other attenuating device is a "maintenance issue." We give little to no weight to this testimony for several reasons.

¶ 29    First, Gieske testified that he is responsible for constructing, not maintaining, bridges. Therefore, while Gieske has personal knowledge about what constitutes construction, he is not qualified to testify about what constitutes maintenance. See *Kim v. Mercedes-Benz, U.S.A., Inc.*, 353 Ill. App. 3d 444, 455-57 (2004) (witness must have personal knowledge of a subject to testify about it). On the other hand, Cairns, as WCDOT's maintenance supervisor, had direct knowledge about what constitutes maintenance, and he never testified that installing a guardrail constitutes maintenance. In fact, he testified that his department is not responsible for repairing or erecting guardrails. Additionally, the case law set forth above makes clear that a county's duty to maintain a roadway requires preserving it, keeping it up, and not permitting it to fall into a state of disrepair but does not require the installation of improvements, such as guardrails or barriers. See *Elfayer*, 325 Ill. App. 3d at 1080; *McKinnon*, 243 Ill. App. 3d at 91; *Ross*, 168 Ill. App. 3d at 89;

9

*Charpentier*, 150 Ill. App. 3d at 995. Thus, despite plaintiff's contention to the contrary, Gieske's testimony is not controlling.

¶ 30    Finally, although the parties did not raise the issue, section 3-104 of the Act (745 ILCS 10/3-104 (West 2022)) provides another basis to affirm the circuit court's entry of summary judgment to Will County. See *Golden Rule Insurance Co. v. Widoff*, 291 Ill. App. 3d 112, 117 (1997) (appellate court may affirm circuit court's judgment on any legal grounds that have factual support in the record even if they were not raised in the trial court). Section 3-104 provides: "Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide *** traffic separating or restraining devices or barriers." 745 ILCS 10/3-104 (West 2022).

¶ 31    Section 3-104 of the Act absolutely immunizes local governments, including counties, for failing to erect traffic restraining devices or barriers on roadways and bridges. See *Bernabei v. County of La Salle*, 236 Ill. App. 3d 958, 963 (1992); *Newsome v. Thompson*, 202 Ill. App. 3d 1074, 1078 (1990). A guardrail is meant "to provide a physical barrier for autos with which it comes into contact." *Michalak v. County of La Salle*, 121 Ill. App. 3d 574, 576 (1984). Thus, pursuant to section 3-104 of the Act, Will County is immune from liability for plaintiff's injury caused by the absence of a guardrail or other traffic restraining device or barrier on the bridge where he was injured.

¶ 32    Because Will County had no duty to install a guardrail at the location of plaintiff's injury and is immune from liability, the trial court properly granted summary judgment to Will County. See *Elfayer*, 325 Ill. App. 3d at 1080; *Gresham*, 229 Ill. App. 3d at 957-58.

¶ 33                                III. CONCLUSION

¶ 34    The judgment of the circuit court of Will County is affirmed.

10

¶ 35    Affirmed.

*DiFoggio v. County of Will Division of Transportation*, 2024 IL App (3d) 230261

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 19-L-119; the Hon. Roger D. Rickmon, Judge, presiding. |
| **Attorneys for Appellant:** | Boris G. Samovalov and Zane D. Smith, of Zane D. Smith & Associates, Ltd., and Michael C. Goode, of Law Office of Michael C. Goode, both of Chicago, for appellant. |
| **Attorneys for Appellee:** | James W. Glasgow, State's Attorney, of Joliet (Scott Pyles and Toni M. Renken, Assistant State's Attorneys, of counsel), for appellee. |